HONORABLE BRIAN D. LYNCH

HEARING DATE: MONDAY, JUNE 17, 2013
HEARING TIME: 9:30 A.M.
LOCATION: TACOMA, COURTROOM I

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

MERIDIAN SUNRISE VILLAGE, LLC,

                Debtor.

MERIDIAN SUNRISE VILLAGE, LLC,

                Plaintiff,

v.

NB DISTRESSED DEBT INVESTMENT FUND LIMITED; STRATEGIC VALUE SPECIAL SITUATIONS MASTER FUND II, L.P.; BANK OF AMERICA NATIONAL ASSOCIATION; and U.S. BANK NATIONAL ASSOCIATION,

                Defendants.

BANKRUPTCY NO. 13-40342

ADVERSARY NO. 13-04225

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES

> *Sentences are not mere collections of words to be taken out of the sentence, defined separately by reference to the dictionary or decided cases, and then put back into the sentence with the meaning you have assigned to them as separate words ...."*[1]

---

[1] Bourne v. Norwich Crematorium Ltd., 1 W.L.R. 691 (1967), quoted in 21 Law Com. 5 (1969).

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 1

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv

Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 1 of 12

Meridian Sunrise Village, LLC ("Debtor"), debtor-in-possession herein, submits this Reply to the supplemental briefing filed by both U.S. Bank and on behalf of defendants NB Distressed Debt Investment Fund Limited, NB Distressed Debt Master Fund L.P., and Strategic Value Special Situations Master Fund II, L.P. (collectively, the "Ineligible Assignees") in support of their objections to the Debtor's Motion for Preliminary Injunction ("Motion"). This Reply is based upon the files and records herein and the accompanying Declaration of Christine Tobin-Presser. Capitalized terms herein shall have the meaning identified in the Motion and the Debtor's Supplemental Memorandum (Docket Nos. 2 and 28) unless otherwise indicated.

A. **Ineligible Assignees Are Not Financial Institutions Under Loan Agreement.**

The Ineligible Assignees' response is based almost exclusively upon the notion that a generic Black's Law Dictionary definition of "financial institution" should control this Court's determination of whether they are each an Eligible Assignee under the Loan Agreement, and so disregard the surrounding terms of "commercial bank," "insurance company" and "institutional lender." The contentions fail because (i) the strained construction of the Loan Agreement the Ineligible Assignees advocate violates basic principles of contract construction; (ii) the Ineligible Assignees would not qualify under state law definitions of "financial institution;" and (iii) the cases the Ineligible Assignees cite do not support their theory of the case.

    1. **Context Requires Finding of Ineligibility.**

Under the expansive definition of "financial institution" advanced by the Ineligible Assignees, the surrounding terms "commercial bank," "insurance company" and "institutional lender" would be jettisoned and rendered superfluous, because each of the latter three would fall under the broad umbrella of financial institutions. This is contrary to Washington contract law.

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 2

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 2 of 12

It is hornbook law that a court must not interpret a contract or statute in any way that renders any portion meaningless or superfluous. See Jongeward v. BNSF Ry., 174 Wn.2d 586, 601, 278 P.3d 157 (2012). In Jongeward, the Court rejected a similar "plain meaning" argument where the proffered meaning of a word would render preceding listed words superfluous. In refusing to ignore the context of the surrounding words, the Jongeward Court applied the doctrine of noscitur a sociis, the principal of construction which provides that words grouped in a list should be given related meaning. Third Nat'l Bank in Nashville v. Impac Ltd., Inc., 432 U.S. 312, 322-23, 97 S. Ct. 2307, 53 L. Ed. 2d 368 (1977));[2] Jongeward, 174 Wn.2d at 601. Under the noscitur a sociis doctrine, a single word in an instrument[3] should not be read in isolation but "the meaning of words may be indicated or controlled by those with which they are associated." Jongeward, 174 Wn.2d at 601 (quoting State v. Roggenkamp, 153 Wn.2d 614, 623, 106 P.3d 196 (2005)); State v. Gonzales Flores, 164 Wn.2d 1, 12-13, 186 P.3d 1038 (2008)); State v. Jackson, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999).

In applying the doctrine to determine the meaning of a word in a series, a court should "take into consideration the meaning naturally attaching to them from the context, and … adopt the sense of the words which best harmonizes with the context." Jackson, 137 Wn.2d at 729 (emphasis added); Roggenkamp, 153 Wn.2d at 623; Gonzales, 164 Wn.2d at 12-13; see also Meresse v. Stelma, 100 Wn. App. 857, 867, 999 P.2d 1267 (2000) (quoting Moore v. California State Bd. of Accountancy, 2 Cal. 4th 999, 831 P.2d 798, 805, 9 Cal. Rptr. 2d 358 (1992) (meaning of items in a list ascertained with

---

[2] Noting that "One hardly need rely on such Latin phrases as ejusdem generis and noscitur a sociis to reach this obvious conclusion." Third Nat'l Bank, 432 U.S. at 323 (quoting United States v. Feola, 420 U.S. 671, 708 (STEWART, J., dissenting).

[3] The doctrine of noscitur a sociius applies to both statutory and contract construction. See Ball v. Stokely Foods, Inc., 37 Wn.2d 79, 221 P.2d 832 (1950)(court used the doctrine of noscitur a sociis in interpreting contract); Meresse v. Stelma, 100 Wn. App. 857, 867 (Wn. App. 2000) (applying noscitur a sociis to interpret restrictive covenants).

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES –
Page 3

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 3 of 12

reference to the other items, giving preference to an interpretation that uniformly treats items similar in nature and scope); Shurgard Mini-Storage v. Department of Revenue, 40 Wn. App. 721, 727, 700 P.2d 1176 (1985) (noscitur a sociis "teaches that the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases.").

The doctrine of noscitur a sociis plainly applies here. Contrary to the strained construction urged by the Ineligible Assignees, the term "financial institution" cannot be pulled from its sentence, assigned an artificial dictionary definition that fits the desired outcome, and then placed back in the sentence to achieve that outcome. Rather, the Court should construe "financial institution" in the context of the series of words of which it is just one, and adopt a meaning that "best harmonizes with the context." Jackson, 137 Wn.2d at 729 .

The term "financial institution" is contained in a word series that also includes the surrounding terms "commercial bank," "insurance company" and "institutional lender." The common feature of each of these latter three entities is that they act as lenders. Each has as a significant portion of its business model the development of relationships with borrowers in connection with the origination and underwriting of loans. It is a relationship arising out of an arm's length transaction in which both parties voluntarily enter into the transaction, and in which both parties have an overarching interest in the borrower's success.

Not so with the Ineligible Assignees. Rather, their apparently common business models – as detailed in their own websites – is to acquire positions in existing distressed loans at significant discounts, without the participation of the borrower, and thereafter work to create leverage and control and otherwise exploit that position by profiting on the delta between the acquisition price and the par value of the interest.

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES –
Page 4

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 4 of 12

> Our focus is on distressed, deep-value opportunities in middle-market companies where we can typically exert significant influence or, in some circumstances, obtain outright control.

See e.g. http://www.svpglobal.com/about-svp-global/. These entities have little or no interest in the success of the borrower, as they rely significantly less on cash flow and more on the "hard assets" that back the loan.

> The Fund (which is listed on the specialist market of the London Stock Exchange) will invest in 40 to 50 holdings diversified across distressed, stressed and special situations investments, <u>with a focus on senior debt backed by hard assets</u>.

See http://www.nbddif.com/pindex.html.

As indicated above, the Court must consider the meaning of "financial institution" in harmony with the associated terms "commercial bank," "insurance company" and "institutional lender." Doing otherwise is to improperly render the latter three terms meaningless or superfluous. <u>See</u> <u>Jongeward</u>, 174 Wn.2d at 601. In contrast, applying the doctrine of <u>noscitur a sociis</u> makes it plain that the term "financial institution" means something other than what might be derived from a dictionary. Its meaning comes from its context within the Loan Agreement and its association of the other terms that surround it. Applying these principles can only yield a conclusion that the Ineligible Assignees are entities that are wholly dissimilar with a harmonized construction of "financial institution" and are manifestly *not* "Eligible Assignees" for purposes of the Loan Agreement.

**2.    State Banking Regulator is the Department of *Financial Institutions*.**

The construction of the Loan Agreement is likely to be determined under state law. <u>See</u> <u>Butner v. United States</u>, 440 U.S. 48 (1979). In Washington, the agency charged with regulating the banking industry is the Department of Financial Institutions ("DFI"). The DFI was formed in 1995 and took over the regulatory duties previously performed by the Department of General

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 5

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv

Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 5 of 12

Administration, and was given authority over entities subject to RCW 30, 31, 32, 33 and 43. RCW 43.320.011(1). The entities subject to these chapters is as follows:

>RCW 30: Banks and Trust Companies
>RCW 31: Miscellaneous Loan Agencies
>RCW 32: Mutual Savings Banks
>RCW 33: Savings and Loan Associations

It is plain that the statutory responsibilities of the Department of Financial Institutions, a department name that was doubtless not chosen in a vacuum, extends to entities consistent with the terms "commercial bank," "insurance company" and "institutional lender." These are the entities deemed "financial institutions" in this state, and not those within the broad and litigation-driven definition advanced by the Ineligible Assignees.

Definitions within these and other state statutes are also useful. For example, a "financial institution" is defined in RCW 30.22.040(8) as follows:

> (8) "Financial institution" means a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized to do business and accept deposits in this state under state or federal law.

Similarly:

> (2) "Financial institution" means state and national banks and trust companies, state and federal savings banks, state and federal savings and loan associations, and state and federal credit unions.

RCW 30.22.041(2). Also:

> (6) "Financial institution" means a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state.

RCW 7.88.010(6). And:

> (8) "Financial institution" means any national or state chartered commercial bank or trust company, savings bank, or savings association, or branch or branches thereof, located in this state and lawfully engaged in business;

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES –
Page 6

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL  Doc 34  Filed 06/13/13  Ent. 06/13/13 16:22:56  Pg. 6 of 12

RCW 39.58.010(8). And:

> "Financial institution," as used in the foregoing provisions of this chapter, means a branch of a bank engaged in banking in this state in accordance with RCW 30.04.300, and any state bank or trust company, national banking association, stock savings bank, mutual savings bank, or savings and loan association, which institution is located in this state and lawfully engaged in business.

RCW 35.38.060. These and possibly many other definitions for "financial institution" adopted by the Legislature in this state describe essentially the same sort of entities: a bank or similar depository and lending institution. Each definition above is consistent with the others and manifest plainly what would be deemed a "financial institution" under state law. The Ineligible Assignees plainly do not meet this definition.

### 3. Bankruptcy Code Definition is Persuasive.

The Bankruptcy Code's definition of "financial institution" is also useful as another statement of the commonly-held meaning for that term:

> (A) a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a 'customer,' as defined in section 741) in connection with a securities contract (as defined in section 741) such customer; or
>
> (B) in connection with a securities contract (as defined in section 741) an investment company registered under the Investment Company Act of 1940.[4]

Bankruptcy Code § 101(22). For purposes of the Bankruptcy Code, a "financial institution" is defined in the terms of a series of lending institutions: a Federal reserve bank, a commercial or savings bank, an industrial savings bank, a savings and loan association, a trust company, or a federally-insured

---

[4] The referenced Section 741 deals with stockbroker liquidations. The Loan Agreement is not a "securities contract," so Subpart (B) above does not apply.

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 7

Bush Strout & Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 7 of 12

credit union (or, as is far too common these days, a receiver, liquidating agent of conservator for these entities). The Ineligible Assignees bear no resemblance to any of these listed entities.

**4. Ineligible Assignees' Case Law Unavailing.**

The Ineligible Assignees cite a number of cases for the proposition that the Court need only refer to Black's Law Dictionary for the definition of "financial institution." These cases do not advance their case as most do not even deal with the critical circumstance here – the interpretation of a one term within a list of other terms.

For example, <u>Invesco Investment Services, Inc. v. Fidelity Deposit and Discount Bank</u>, 355 S.W.3d 257 (Tex. App. 2011), addresses the interpretation of "financial institution" only as a standalone term. In addition, while the court in that case did look to Black's Law Dictionary definition to determine the status of the plaintiff, it specifically noted that it would look to the plain and common meaning of words "<u>unless a contrary intention is apparent from the context</u> or such a construction leads to absurd results." <u>Invesco</u>, 355 S.W.3d at 260 (emphasis added).

Similarly, <u>In re Johnson</u>, 269 B.R. 324 (Bankr. M.D. Pa. 2001), <u>Deutsch, Larrimore & Farnish, P.C. v. Johnson</u>, 577 Pa. 637 (Pa. Sup. Ct. 2004), <u>Public Citizen v. Farm Credit Administration</u>, 938 F.2d 290 (D.C. Cir. 1991), and <u>In re Derienzo</u>, 254 B.R. 334 (M.D. Pa. 2000) each involve only the determination of "financial institution" as a standalone term, as opposed to a term that is simply one among many. These cases do not apply here.

The case of <u>Elliott Associates, L.P. v. Republic of Panama</u>, 975 F. Supp. 322 (S.D.N.Y. 1997), is distinguishable on a multitude of bases. Most importantly, the court only held that "Elliott is at least arguably a 'financial institution.'" The court's decision to treat Elliott as a financial institution for purpose of the loan agreement was based upon the conduct of Panama in apparently accepting the assignment. Moreover, the assignment provision in the agreement in Elliott is broad (assignment can

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES –
Page 8

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv

Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 8 of 12

1  be made to "any other bank or financial institution") in contrast to the Loan Agreement which is
2  designed to be restrictive.

3  **5.  Ineligible Assignees' Declarations Confirm Ineligible Status.**

4  The Ineligible Assignees submitted two declarations that similarly do not advance their
5  interests. Neither declarant attempts to distance his firm from the predatory business model described
6  in their respective websites. The declarations simply reinforce the fundamental differences between
7  these entities and those that would qualify as an Eligible Assignee.

8  The Declaration of David B. Charnin provides information about himself and the various
9  activities of an entity called Strategic Value Partners, LLC (SVP LLC). The purpose of this
10 information is unclear as SVP LLC is not one of the Ineligible Assignees and is only indirectly related
11 thereto. Id. at ¶ 1; Tobin-Presser Decl., Ex. A. Rather, the Charnin Declaration and the exhibits
12 thereto confirm the Debtor's concerns with respect to the scope of Ineligible Assignee Strategic
13 Value's activities by directly stating that "[Strategic Value] is formed primarily for the purpose of
14 making investments globally in a broad range of distressed and/or undervalued financial securities and
15 instruments, debt instruments, 'sponsorship' equity investments in companies going through a
16 turnaround or restructuring . . ." Charnin Decl. at Ex. C-2.

17 The Declaration of Michael Holmberg is equally illuminating. Mr. Holmberg provides
18 information regarding the various activities of Neuberger Berman Group LLC ("NB"), which again is
19 not one of the Ineligible Assignees. Holmberg Decl.; Tobin Decl, Ex. B. NB evidently manages over
20 $216 billion in assets of which Ineligible Assignees NB Distressed and NBLP comprise a very small
21 fraction. Holmberg Decl. ¶ ¶ 7 and 8.

22 Of NB's large management portfolio, Mr. Holmberg, with "over 20 years' experience
23 investing in opportunistic stressed, distressed and special situation credit-related investments" works

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES  –
Page 9

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 9 of 12

for the subsidiary of NB that manages the Ineligible Assignees NB Distressed and NBLP. Id. at ¶ 4. Mr. Holmberg acknowledges that the objective of the Ineligible Assignees is "to <u>provide investors with attractive risk-adjusted returns through long-biased, opportunistic stressed, distressed and special situation credit-related investments while seeking to limit downside risk</u>." Id. at ¶ 5 (emphasis added). While the Holmberg Declaration presents two examples of allegedly cooperative behavior out the 50-79 companies in which NB Distressed and NBLP have invested, they give no comfort here. The fact that an NB affiliate may have advanced funds in connection with a property in receivership, or <u>after</u> it took title to a property via a deed in lieu, merely reinforces the NB business plan of taking over and controlling the assets underlying the loan interests they acquire.

Both the Charnin Declaration and Holmberg Declaration relate that the owners of holders of interests in the Ineligible Assignees include institutional lenders. However, the Loan Agreement provides that the assignee itself, and not the investors therein, must fall into one of the enumerated categories.

**B.  Issues Raised in US Bank Memorandum**

    **1.  Section 13.2 of the Loan Agreement Critical to Both Borrower and Lenders.**

Whether the particular terms of Section 13.2 were specifically negotiated by the parties – and it is the recollection of the Debtor's key individuals that they were – is ultimately irrelevant. The provision is part of the Loan Agreement and is enforceable according to its terms, regardless of the number of drafts that preceded the final form.[5]

What is much more important are the parties' manifestations of Section 13.2's critical importance. The Lender Group does not dispute that they were actively marketing their interests for

---

[5] The Declaration of James Gradel that U.S. Bank contains no disagreement that Section 13.2 was a material – and ultimately critical – provision for both parties under the Loan Agreement.

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 10

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 10 of 12

sale in the fall of 2012. They also do not dispute that, in the middle of this process, they approached the Debtor and requested that it wholly waive its protections under Section 13.2. One can infer that this request followed an unsuccessful effort to market the Lender Group's interests to parties that would actually qualify as "Eligible Assignees" under the Loan Agreement. This provision was of such great importance that the Debtor risked bankruptcy by declining to waive it, and the Lender Group forced the bankruptcy filing by triggering the running of default interest when the Debtor declined its proposal.

### 2. Debtor Will Suffer Irreparable Harm.

U.S. Bank appears to largely base its contentions here on the notion that the Ineligible Assignees hold only 26.67% of the Class 2 vote and, therefore, cannot bar class acceptance under § 1126(c). This is incorrect.

Section 1126(c) provides that a class of creditors has accepted a plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of claimants that have returned ballots. In this case, the Ineligible Assignees – likely with some intent – broke the single interest previously held by Bank of America into three separate pieces. One of these pieces comprises only 2.76% of the total. By so doing, one vote among four was converted into three votes among six. If allowed to proceed, the Ineligible Assignees now hold veto power over any form of plan that is not to their liking.

### 3. Bank of America is No Longer a Lender.

Finally, U.S. Bank suggests that Bank of America should be permitted to participate in the plan process if the Court were to enter a preliminary injunction. This request is premature. Bank of America assigned away all its rights under the Loan Agreement. It would have a right to participate as a member of the Lender Group only if it once again became a member of that group. That it

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA OF U.S. BANK AND THE INELIGIBLE ASSIGNEES – Page 11

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL   Doc 34   Filed 06/13/13   Ent. 06/13/13 16:22:56   Pg. 11 of 12

1  created this set of circumstances by its assignment of its interests to an entity that was not an Eligible
2  Assignee is a problem it voluntarily created for itself.
3      For purposes of a preliminary injunction, the Debtor has not requested and the Court
4  presumably does not intend to enter judgment on the Debtor's complaint. The Court's determinations
5  of the underlying claims await another day.
6      DATED this 13th day of June, 2013.

                BUSH STROUT & KORNFELD LLP

                By */s/ James L. Day*
                  James L. Day, WSBA #20474
                  Christine M. Tobin-Presser, WSBA #27628
                Attorneys for Debtor

DEBTOR'S REPLY TO SUPPLEMENTAL MEMORANDA
OF U.S. BANK AND THE INELIGIBLE ASSIGNEES –
Page 12

BUSH STROUT & KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 yf135113hv
Case 13-04225-BDL    Doc 34    Filed 06/13/13    Ent. 06/13/13 16:22:56    Pg. 12 of 12