UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re:

MERIDIAN SUNRISE VILLAGE, LLC,

Debtor.

---

MERIDIAN SUNRISE VILLAGE, LLC,

Plaintiff,

v.

NB DISTRESSED DEBT INVESTMENT FUND LIMITED; STRATEGIC VALUE SPECIAL SITUATIONS MASTER FUND II, L.P.; BANK OF AMERICA NATIONAL ASSOCIATION; and U.S. BANK NATIONAL ASSOCIATION,

Defendants.

BANKRUPTCY NO. 13-40342

ADVERSARY NO. 13-04225

FUNDS' REPLY TO DEBTOR'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Debtor argues three issues in the Supplemental Memorandum in Support of its Motion: (A) The "*ejusdem generis*" maxim, Supp. Mem. at 3-4; (B) the Court's jurisdiction to enter a final judgment in this case, *id.* at 4-6 (*i.e.,* the *Stern v. Marshall* issue); and (C) Debtor's claim that "Allowing [the Funds] to participate in the Plan process will create an extreme hardship for the Debtor and cause irreparable injury." *Id.* at 6:5-6. This Reply addresses each issue in turn.

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 1

74037215.1 0064727-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

Case 13-04225-BDL    Doc 37    Filed 06/13/13    Ent. 06/13/13 17:17:41    Pg. 1 of 6

### A. *Ejusdem Generis* Does *Not* Apply to the Different Types of Eligible Assignees

The Funds have addressed **doctrine** of *ejusdem generis* in detail at pages 5-6 of their Supplemental Objection, explaining the *type* of language the maxim applies to, why it does not apply *as a matter of construction* to the definition of "Eligible Assignee" in the Loan Agreement and offering examples of *the sort of language* to which the canon does apply (but are not used in the text at issue in the Loan Agreement). Such matters have not been addressed by Debtor and therefore are not addressed in this Reply.

Rather, Debtor's Supplemental Memorandum raises for the first time the **factual** proposition that the meaning of "financial institution" in the definition of "Eligible Assignee" is informed by a unifying characteristic of the other three types of "Eligible Assignee": "[E]ach of the three other bases (commercial bank, insurance company or institutional lender) shares the common and fundamental trait of being a lender." Supp. Mem. at 3:20-21. But do they?

Debtor's unsupported assertion that commercial banks, insurance companies and institutional lenders share the "common and fundamental trait of being a lender" is unsustainable. According to the National Association of Insurance Commissioners:[1]

> Commercial mortgage loan investments are concentrated within a relatively small number of insurers, because a significant volume of commercial mortgage loans is necessary to economically justify the infrastructure needed to participate in this asset class. An effective commercial mortgage loan origination effort requires extensive specialized expertise, as well as other resources.
>
> ***According to the NAIC database, 289 life insurers (or 35%) owned commercial mortgage loans as of year-end 2011.*** Of those, 96 life insurers (or 33%) have more than 10% of their cash and invested assets in commercial mortgage loans, and 10 life insurers have more than 20% of their assets invested in commercial mortgage loans.

---

[1] As explained on its web site—

> The National Association of Insurance Commissioners (NAIC) is the U.S. standard-setting and regulatory support organization created and governed by the chief insurance regulators from the 50 states, the District of Columbia and five U.S. territories. Through the NAIC, state insurance regulators establish standards and best practices, conduct peer review, and coordinate their regulatory oversight.

See http://www.naic.org/index_about.htm.

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

74037215.1 0064727-00001

Case 13-04225-BDL    Doc 37    Filed 06/13/13    Ent. 06/13/13 17:17:41    Pg. 2 of 6

NAIC, *The Insurance Industry's Exposure to Commercial Mortgage Lending and Real Estate: A Detailed Review of the Life Insurance Industry's Commercial Mortgage Loan Holdings (Part II)* at 1 (Oct. 26, 2012) (available at http://www.naic.org/capital_markets_archive/121220.htm). (Emphasis added). A copy of the NAIC's report is attached hereto as Exhibit 1. If only 35% of life insurers own mortgage loans, then **65% of life insurers do not own any mortgage loans, and it follows that even fewer actually <u>make</u> loans**.

Turning from the life insurers to property and casualty carriers, the Debtor's proposition that commercial banks, insurance companies and institutional lenders "share[ ] the common and fundamental trait of being a lender" seems even more difficult to sustain. According to the American Insurance Association (the "**AIA**"), only 1% (or $16 billion) of the property/casualty industry's $1.2 trillion in invested assets were in "real estate/mortgage loans". *See* AIA Policy Development & Research, *How Property/Casualty Insurance Companies Invest Premium Dollars* at 2 (Feb. 2010) (available at http://www.aiadc.org/AIAdotNET/docHandler.aspx?DocID=313776).[2] A copy of the AIA report is attached hereto as Exhibit 2. Rather than lending, insurance companies are primarily in the business of collecting premiums and then managing the corresponding risk.[3]

Thus, the *factual* basis for Debtor's *ejusdem generis* claim—that commercial banks, insurance companies and institutional lender share the "fundamental trait" of being lenders—is as problematic as Debtor's attempt to make the *language* of the Loan Agreement fit the maxim.

---

[2] The smaller amount of real estate and mortgage loan investments makes sense when one considers the differences between life and P&C insurance: Whereas actuaries can estimate mortality rates and pay-out dates for a population of insureds with relative confidence, and life insurers can structure their investment portfolios with corresponding maturities, P&C losses are less predictable, requiring a different type of investment portfolio. "Because claims can come due suddenly and unexpectedly, the property/casualty business requires stable and liquid investments." *How Property/Casualty Insurance Companies Invest Premium Dollars* at 3.

[3] According to its web site, "Since 1866, the American Insurance Association (AIA) has served as the leading property-casualty insurance trade organization. Representing more than 300 insurers that write more than $110 billion in premiums each year[.]" *See* http://www.aiadc.org/aiapub/content/aspx?id=356779.

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 3

74037215.1 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

Case 13-04225-BDL    Doc 37    Filed 06/13/13    Ent. 06/13/13 17:17:41    Pg. 3 of 6

It is thus clear that when Debtor says the references to commercial bank, insurance company and institutional lender in the Loan Agreement all share the common and fundamental trait of referring to lenders, Debtor is rewriting the definition to mean only those insurance companies that are institutional lenders, not the vast majority of insurance companies that are not. This illustrates that the definition of Eligible Assignee refers to four distinct types of entities, only two of which (commercial banks and institutional lenders) commonly function as direct lenders, and two of which (insurance companies and financial institutions) are as or more likely to hold debt as opposed to being direct lenders. Debtor's argument to the contrary has no factual basis or support in the definition.

**B.     The Court Should Not Decide the *Stern v. Marshall* Issue at this Time**

Following the Court's observation at the initial hearing on Debtor's PI/TRO Motion that the Motion concerned core *plan confirmation issues*, neither US Bank nor the Funds addressed the *Stern v. Marshall* issue in their Supplemental Memoranda. Accordingly (unless US Bank contests the issue in its Reply Memorandum), the *Stern v. Marshall* issue is not properly before the Court with respect to the PI/TRO Motion and should not be decided in a conclusive manner.

Once the plan confirmation process is concluded, however, the complexion of this issue is likely to take on a different tone. After the Court grants or denies plan confirmation, it is far more difficult to imagine how the outcome of the "Eligible Assignee" issue affects the bankruptcy process. The Funds therefore expressly reserve their rights with respect to the *Stern v. Marshall* issue as it may apply in any context *other than* with respect to the pending Motion.

**C.     Debtor Has Not Shown a Likelihood of Irreparable Injury**

Debtor claims the Funds' potential veto of a consensual plan will cause it irreparable injury. Supp. Mem. at 6:5-6. This argument is flawed on a number of different levels. Among other things, it:

//

//

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 4

74037215.1 0064727-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

Case 13-04225-BDL    Doc 37    Filed 06/13/13    Ent. 06/13/13 17:17:41    Pg. 4 of 6

- Assumes that, but for the Funds' involvement in the Loan, one or more of the Class 2 creditors *other than* the Funds would change their vote(s) to accept an amended plan;[4]

- Assumes without foundation that the Funds will veto any plan proposed;

- Further presumes it would be wrongful for the Funds to reject the plan;

- Ignores the Court's ability, if appropriate, to designate the Funds' votes under Section 1126(e);

- Ignores Debtor's ability to cram-down a plan over the Funds' objection if the plan is "fair and equitable";

- Assumes that having to modify a plan in order to win the Funds' acceptance is a cognizable injury; and

- Presumes that money damages could not compensate it for any injury it suffers.

With respect to the last presumption, Debtor cites *Champion Enterprises, Inc. v. Credit Suisse et al.*, Adversary No. 2012 Bankr. LEXIS 4009 (D. Del. 2012), Supp. Mem. at 9:3-4, in support of its claim that, without injunctive relief, it "may be unable to definitively prove or conclusively trace its damages . . . to the improper participation of the [Funds] as Lenders". Supp. Mem. at 9:1-3. The *Champion* case does not stand for this proposition, or for the larger notion that money damages cannot compensate a debtor for improper creditor activity.[5] Rather, the case held that there was no causal relationship between the improper loan assignment and the debtor's demise.[6] The logic of the *Champion* decision resonates in this case because Debtor cannot blame the Funds for rejection of Debtor's Chapter 11 Plan when all of Debtor's other

---

[4] In fact, even assuming that Class 2 had only 4 votes, with the three Funds entitled to cast only one ballot, it would still require all three of the other Class 2 creditors to vote to switch from "reject" to "accept" in order to avoid a 2 to 2 split (and therefore non-accepting) vote.

[5] *Champion* also is fundamentally different from the case at hand because the improper assignee in that case acted in an extrajudicial context, allegedly causing the debtor to file for bankruptcy protection. In this case, the Funds did not become assignees until after Debtor's bankruptcy case was filed, and the actions that Debtor complains of will be in the context of a Court-supervised bankruptcy process.

[6] The parenthetical summary of the *Champion* case in the Supplemental Memorandum accurately describes this holding.

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 5

74037215.1 0064727-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1 | Class 2 creditors are independently opposed to the Plan. *See Champion* 2012 Bankr. LEXIS
2 | 4009, at 22-23.

## CONCLUSION

The arguments advanced by Debtor in its Motion and Supplemental Memorandum fail to show either that Debtor is likely to succeed on the merits of its claim that the Funds are not Eligible Assignees or that Debtor is likely to suffer a legally cognizable harm in the absence of injunctive relief. To the contrary, the Funds have made a *prima facie* case that they are "financial institutions" for purposes of the Loan Agreement's definition of "Eligible Assignee", and the possibility that Debtor might suffer a legally cognizable and irreparable harm while under this Court's protection is remote at best. Debtor falls far short of meeting the requirements of the *Winter* test and should be denied the requested relief..

For all of the foregoing reasons and those set forth in the Funds' and US Bank's related pleadings, the Court should deny Debtor's Motion.

DATED this 13th day of June, 2013.

STOEL RIVES LLP

By /s/ David B. Levant
David B. Levant, WSBA #20528
Of Attorneys for NB Distressed Fund Limited and Strategic Value Special Situations Master Fund II, L.P.

FUNDS' REPLY TO DEBTOR'S
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR PI – 6

74037215.1 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

Case 13-04225-BDL    Doc 37    Filed 06/13/13    Ent. 06/13/13 17:17:41    Pg. 6 of 6